# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **JEFFREY PAUL HALE,** | § § § | |
| *Plaintiff* | § § | |
| **v.** | § § | |
| **BRYAN COLLIER, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, AND APRIL ZAMORA, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE TEXAS CORRECTIONAL OFFICE ON OFFENDERS WITH MEDICAL OR MENTAL IMPAIRMENTS,** | § § § § § § § § § § § § | Case No. 1:20-CV-841-RP-SH |
| *Defendants* | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction, filed August 12, 2020 (Dkt. 6); Plaintiff's Supplement to Application for Temporary Restraining Order and Preliminary Injunction, filed August 23, 2020 (Dkt. 12); and Defendants' Response, filed August 31, 2020 (Dkt. 14). On August 13, 2020, the District Court referred all pending and future nondispositive and dispositive motions to the undersigned Magistrate Judge for resolution and Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I. Background

### A. Parole under the MRIS

Section 508.146(a) of the Texas Government Code establishes the Medically Recommended Intensive Supervision Program ("MRIS"), which provides that certain categories of inmates "may be released" on early parole for certain medical conditions. TEX. GOV'T CODE ANN. § 508.146(a) (West 2017). The Texas Correctional Office on Offenders with Medical or Mental Impairments ("TCOOMMI"), a division of the Texas Department of Criminal Justice ("TDCJ"), is the agency that oversees the MRIS. Under Section 508.146(a), which was amended in 2007, an inmate with a reportable conviction under Chapter 62 of the Texas Code of Criminal Procedure[1] "may only be considered to be released on MRIS if TCOOMMI identifies the inmate as being:

> (A) a person who is elderly or terminally ill, a person with mental illness, an intellectual disability, or a physical disability, or a person who has a condition requiring long-term care, if the inmate is an inmate with an instant offense that is described in Article 42A.054, Code of Criminal Procedure; or
>
> (B) in a persistent vegetative state or being a person with an organic brain syndrome with significant to total mobility impairment, if the inmate is an inmate who has a reportable conviction or adjudication under Chapter 62, Code of Criminal Procedure;

TEX. GOV'T CODE ANN. § 508.146(a) (West 2017).

If the TCOOMMI recommends that an inmate should be released to MRIS, the application is then reviewed by the Texas Board of Pardons and Paroles ("Parole Board"), which has the sole and final authority regarding the release of inmates to MRIS. *Id.* at § 508.146(e).

---

[1] Chapter 62 of the Texas Code of Criminal Procedure codifies the Texas Sex Offender Registration Program. *Does 1-7 v. Abbott*, 945 F.3d 307, 310 (5th Cir. 2019). Its registration requirements apply retroactively to all persons with a "reportable conviction or adjudication occurring on or after September 1, 1970," for several enumerated sex offenses. TEX. CODE CRIM. PROC. ANN. arts. 62.001, 62.002 (West 2019).

2

### B. Plaintiff's Request for MRIS

On March 7, 2002, after a jury trial, Plaintiff Jeffrey Paul Hale was convicted, in Criminal District Court Four of Tarrant County, Texas, on two counts of aggravated sexual assault of a child under 14 years of age (Counts One and Two), and one count of indecency with a child by contact (Count Three). Dkt. 6-1 at 14-18. The district court sentenced Plaintiff to 40 years imprisonment on Counts One and Two and 10 years imprisonment on Count Three, to be served concurrently. *Id.*

Plaintiff commenced serving his sentence on April 18, 2002, and is currently held in institutional confinement in Huntsville, Texas. Plaintiff's parole eligibility date is March 3, 2022, his projected release date is March 3, 2042, and his maximum sentence date is March 3, 2042. *Id.* at 4.

In June 2020, Plaintiff was diagnosed by TDCJ physicians with retroperitoneal liposarcoma and given six months to live. *Id.* at 23. Because Plaintiff's tumor was inoperable and he was too sick to undergo chemotherapy, his treating physicians recommended that he receive "palliative care and hospice." *Id.* Plaintiff's physicians then submitted a request to TCOOMMI, on Plaintiff's behalf, asking that Plaintiff be released to MRIS. However, because Plaintiff had been convicted of a reportable sex offense under Chapter 62 of the Texas Code of Criminal Procedure, to qualify to be considered for MRIS release he had to be "in a persistent vegetative state or being a person with an organic brain syndrome with significant to total mobility impairment." TEX. GOV'T CODE ANN. § 508.146(a)(1)(B). Accordingly, on June 24, 2020, TCOOMMI denied Plaintiff MRIS release, stating that the "[i]nformation submitted to this office by the unit medical provider indicates that the Offender's condition does not meet the clinical criteria for MRIS at this time." Dkt. 6-2 at 20.

On August 12, 2020, Plaintiff filed this civil rights lawsuit against Bryan Collier, the Executive Director of the TDCJ, and April Zamora, the Director of the TCOOMMI (collectively, "Defendants"), alleging that TCOOMMI's denial of his MRIS request because of his status as a sex offender violated the *Ex Post Facto* and Equal Protection Clauses of the United States Constitution. Dkt. 1.

Plaintiff also filed the instant Application for Temporary Restraining Order ("TRO") and Preliminary Injunction, asking the Court to order (1) the Defendants to forward Plaintiff's application for MRIS relief to the Parole Board in the same manner as they would an application from an inmate who does not have a reportable sex offense under Chapter 62 of the Texas Code of Criminal Procedure; and (2) the Parole Board, on its receipt of Plaintiff's application for MRIS, to process Plaintiff's application in the same manner as they would an application from an inmate who does not have a reportable sex offense under Chapter 62 of the Texas Code of Criminal Procedure.

## II.     Legal Standards

Requests for injunctive relief, including requests for a TRO, are governed by Federal Rule of Civil Procedure 65. The purpose of a TRO is to preserve the status quo and prevent irreparable harm until the Court can conduct a preliminary-injunction hearing. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). A preliminary injunction is an "extraordinary and drastic remedy" that should only issue if the movant clearly establishes (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

While the decision to grant or deny a preliminary injunction is discretionary with the district court, "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). "The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). "It should only be granted if the movant has clearly carried the burden of persuasion on all four *Callaway* prerequisites." *Miss. Power*, 760 F.2d at 621.

### III.   Analysis

As noted, Plaintiff contends that the TCOOMMI's denial of his request to be released under the MRIS based on his status as a sex offender violated the *Ex Post Facto* and Equal Protection Clauses of the United States Constitution. Plaintiff seeks a TRO and preliminary injunction ordering Defendants to immediately process and forward Plaintiff's application for MRIS relief to the Parole Board, and to order the Parole Board, on its receipt of Plaintiff's application for MRIS relief, to process Plaintiff's application "in the same manner as it would an application submitted by an inmate who does not have a reportable sex offense under Chapter 62 of the Texas Code of Criminal Procedure." Dkt. 6 at 2. Defendants argue that Plaintiff's Application for TRO and preliminary injunction should be denied because he has failed to carry his burden of persuasion on all four of the prerequisites for a TRO or preliminary injunction.

#### A.  Substantial Likelihood of Success

Regarding the first *Callaway* factor, Defendants argue that Plaintiff has failed to demonstrate a substantial likelihood of success on the merits of his claims because he failed to exhaust his administrative remedies before filing this lawsuit and has failed to show that his constitutional rights have been violated. Before taking up these arguments, the Court first addresses the issue of

standing *sua sponte*. *See Ford v. NYLCare Health Plans of Gulf Coast*, *Inc.*, 301 F.3d 329, 332 (5th Cir. 2002) ("Although Article III constitutional standing was not raised by the parties or considered by the district court, we must—where necessary—raise it *sua sponte*.").

### 1. Standing

Under Article III of the Constitution, the jurisdiction of federal courts is limited to cases and controversies. U.S. CONST. art. III, 2, cl. 1; *Raines v. Byrd*, 521 U.S. 811, 818 (1997). A key element of the case-or-controversy requirement is that a plaintiff must establish standing to sue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (stating that plaintiff bears the burden of establishing Article III standing). To establish Article III standing, a plaintiff must demonstrate: (1) an injury-in-fact that is (2) fairly traceable to the defendant's challenged action and (3) redressable by a favorable outcome. *Id.* at 560-61. If a plaintiff fails to establish all three of these elements, it lacks standing to sue in federal court.

Plaintiff has failed to meet the redressability factor because Defendants do not have the authority to order the Board of Pardons and Paroles, a separate Texas agency, to release inmates on MRIS. Under Section 508.146(e) of the Texas Government Code, the Board of Pardons and Paroles has the sole and final authority regarding the release of inmates to MRIS. TEX. GOV'T CODE ANN. § 508.146 (West 2017) ("Only parole panels composed of the presiding officer of the board and two members appointed to the panel by the presiding officer may make determinations regarding the release of inmates on medically recommended intensive supervision under Subsection (a) or of inmates released pending deportation."). Accordingly, Defendants Collier and Zamora lack the power to order the Board of Pardons and Paroles to release inmates on MRIS parole.

Because Texas law does not explicitly grant Defendants the power to order the Board of Pardons and Paroles to release inmates on parole, Plaintiff cannot establish that entering a TRO or

preliminary injunction ordering Defendants to do so would redress his injury. Accordingly, Plaintiff has not met his burden to establish Article III standing to litigate his claims against Defendants in federal court, and thus has failed to show a substantial likelihood of success on the merits.

### 2. Plaintiff's Constitutional Claims

Even if Plaintiff had standing to bring this lawsuit, he has failed to show that his constitutional rights were violated.[2] Plaintiff alleges that Section 508.146(a) violates the Equal Protection Clause of the Fourteenth Amendment because it categorically excludes from consideration terminally ill sex offenders unless they are in "a persistent vegetative state" or have "an organic brain syndrome with significant to total mobility impairment." Dkt. 6 at 26.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To establish an equal protection violation, Plaintiff must first show that "two or more classifications of similarly situated persons were treated differently" under the statute. *Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012). Once that threshold element is established, the Court then determines the appropriate level of scrutiny to apply. *Id.* "Strict scrutiny is required if the legislative classification operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution." *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995). If neither a suspect class nor a fundamental right is implicated, the classification need only bear a rational relationship to a legitimate governmental purpose. *Id.*

---

[2] Because the Court finds that Plaintiff has failed to allege a violation of a constitutional right, the Court need not address Defendants' argument that Plaintiff has failed to exhaust administrative remedies.

7

"As long as there is *a* conceivable rational basis for the official action, it is immaterial that it was not *the* or *a* primary factor in reaching a decision or that it was not *actually* relied upon by the decisionmakers or that some other nonsuspect irrational factors may have been considered." *Reid v. Rolling Fork Pub. Util. Dist.*, 854 F.2d 751, 754 (5th Cir. 1988). The burden is on the challenging party to counter "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993).

Plaintiff's equal protection claim fails because the Fifth Circuit has held repeatedly that sex offenders are not a suspect class, and that subjecting such offenders to different parole procedures is reasonably related to legitimate penological interests. *Brown v. Dretke*, 184 F. App'x 384, 385 (5th Cir. 2006); *Rublee v. Fleming*, 160 F.3d 213, 217 (5th Cir. 1998); *Wottlin v. Fleming*, 136 F.3d 1032, 1036 (5th Cir. 1998); *see also Miller v. Owens*, No. A-10-CA-070-LY, 2011 WL 2582722, at *8 (W.D. Tex. June 29, 2011) (denying sex offender's equal protection claim and holding that "subjecting such offenders to different parole procedures is reasonably related to a legitimate penological interest"). As the Supreme Court has stated: "Sex offenders are a serious threat in this Nation. The victims of sex assault are most often juveniles, and when convicted sex offenders reenter society, they are much more likely than any other type of offender to be re-arrested for a new rape or sexual assault." *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 4 (2003).

Moreover, a convicted person has no due process right to be conditionally released before the expiration of his sentence. *See Bd. of Pardons v. Allen*, 482 U.S. 369, 378 n.10 (1987) (explaining that "statutes or regulations that provide that a parole board 'may' release an inmate on parole do not give rise to a protected liberty interest"); *Greenholtz v. Neb. Penal Inmates*, 442 U.S. 1, 11 (1979) (holding that a statute that "provides no more than a mere hope that the benefit will be obtained . . . is not protected by due process"); *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir.

1997) (holding that state prisoners in Texas "have no protected liberty interest in parole"); *Ex parte Johnson*, 541 S.W.3d 827, 830 (Tex. Crim. App. 2017) ("A Texas inmate does not have a liberty interest in release on parole.").

Regarding MRIS specifically, the Fifth Circuit has held that Texas prisoners have "no constitutionally protected interest in release" on MRIS because "the decision whether to release an inmate to MRIS is entirely within the Parole Board's discretion." *Barker v. Owens*, 277 F. App'x 482 (5th Cir. 2008); *accord Moore v. TDCJ,* No. 3:17-CV-205-D (BH), 2018 WL 4938796, at *4 (N.D. Tex. Sept. 10, 2018) ("A prisoner has no constitutionally protected liberty interest in release on MRIS"), *report and recommendation adopted*, 2018 WL 4932517 (N.D. Tex. Oct. 11, 2018); *Foreman v. Dir., TDCJ-CID*, No. 6:11CV116, 2011 WL 5080180, at *8 (E.D. Tex. July 12, 2011) (same), *report and recommendation adopted*, 2011 WL 5080174 (E.D. Tex. Oct. 24, 2011); *Miller v. Fox*, No. CIV.A H-09-2455, 2010 WL 518772, at *4 (S.D. Tex. Feb. 2, 2010) (same). Based on the foregoing, Plaintiff has failed to state a cognizable equal protection claim.

The Court also finds that Plaintiff has failed to allege a violation of the *Ex Post Facto* Clause. Plaintiff argues that the 2007 amendments to Section 508.146(a)(1)(B) violate the *Ex Post Facto* Clause because it was enacted after Plaintiff committed his offenses in 1998.

The *Ex Post Facto* Clause of the United States Constitution[3] bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000). "A statute violates the *Ex Post Facto* Clause only if it retroactively effects a change in the definition of respondent's crime or increases the punishment attached to respondent's crime." *Wallace v. Quarterman*, 516 F.3d 351, 354 (5th Cir. 2008). "The Parole

---

[3] U.S. CONST. art. I, § 10, cl. 1.

Commission determines a prisoner's suitability for parole, not his eligibility, for the latter is determined by the length of one's sentence. While changes to parole eligibility could retroactively increase punishment, determinations of suitability for parole . . . are discretionary." *Id.* Accordingly, the Fifth Circuit has held "that changes in Parole Commission guidelines on the suitability of parole do not violate the *Ex Post Facto* Clause." *Id.* Based on this precedent, Plaintiff's claim under the *Ex Post Facto* Clause also fails.

### B. Conclusion

Based on the foregoing, Plaintiff has failed to demonstrate a substantial likelihood of success on the merits, and thus has failed to show that he is entitled to the "extraordinary and drastic remedy" of a TRO and preliminary injunction. *See Miss. Power*, 760 F.2d at 621 (stating that a preliminary injunction "should only be granted if the movant has clearly carried the burden of persuasion on all four *Callaway* prerequisites"). Accordingly, Plaintiff's Application for a TRO and preliminary injunction should be denied.

### IV.   Recommendation

The undersigned **RECOMMENDS** that the District Court **DENY** Plaintiff Jeffrey Paul Hale's Application for Temporary Restraining Order and Preliminary Injunction (Dkt. 6).

### V.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and,

except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **SIGNED** on September 3, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE